CUMBERLAND MOTOR SALES ET AL. *v.* HILLIKER

[No. 164, October Term, 1955.]

*Decided May 4, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE COLLINS, HENDERSON and HAMMOND, JJ.

*William C. Walsh* and *William Walsh,* with whom were *Miles, Walsh & Stockbridge* on the brief, for the appellants.

*William L. Wilson,* with whom was *Edward J. Ryan* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Allegany County reversing an order of the State Industrial Accident Commission which disallowed a claim for compensation on the ground that the claim was not filed within the one year period of limitations prescribed by the Workmen's Compensation Act, Code (1951), Art. 101, sec. 38. The court submitted two issues to a jury: (1) "Was the claim in this case filed within the time prescribed by law?" and (2) "If the answer to the first issue is 'No', was the failure to file such claim within the time prescribed by law induced or occasioned by facts and circumstances amounting to an estoppel of the employer and insurer to rely on such failure?" The jury answered "No" to the first issue and "Yes" to the second. The appellants contend that there was no legally sufficient evidence to warrant the submission of either issue to the jury.

There was little conflict in the testimony. The appellee was a laborer with an eighth grade education. He was employed on a used car lot in Cumberland operated by Carl Billmyer, trading as Cumberland Motor Sales. While cleaning out the trunk of a car on January 7, 1952, the lid fell and injured his back. He testified he had never had a back injury before, although the appellants produced evidence to the contrary. He mentioned the accident to Billmyer's brother, whom he described as a foreman. He continued working but, because of the pain in his back, he went to see his own physician, Dr. Weisman, on January 10. X-rays were taken on January 12. On January 29, Dr. Weisman sent him to Dr. Faw, who examined him and prescribed a brace. He testified that that evening he asked his employer, "What will I do about filing a claim to get a brace?" Billmyer said: "Never mind, I will take care of that"; asked "How much is it?" and on being told that the brace would cost $20.00, gave him that amount of

money. The appellee then bought the brace. Billmyer admitted giving him the money, but testified that it was deducted from his wages. This testimony was not denied.

The appellee continued to work for Billmyer until November 7, 1952, when he went to the Memorial Hospital for treatment. He left the hospital on November 12, and returned to work. He was not paid by Billmyer for the time spent in the hospital. The appellee paid the hospital bill of about $100.00 and all of the doctors' bills without asking for reimbursement from his employer or anyone else. He was "furloughed" in October, 1953, and went to work for the Thompson Buick Garage in Cumberland. He worked there until May 28, 1954, when he left to do lighter work in Constitution Park, because his back hurt.

The appellee's wife testified that in February, 1954, she called Billmyer on the telephone and asked if he had had Workmen's Compensation insurance at the time of her husband's injury in January, 1952. She did not say anything about filing a claim. Billmyer told her that he had carried insurance and gave her the name of his insurance agent. He told her he had filed no claim for her husband. She testified she told her husband of this conversation. She also testified, but Billmyer denied, that Billmyer told her to send any doctors' bills to his insurance company. Billmyer testified that Hilliker never made any claim for compensation, never asked him to file any claim, and never inquired about insurance prior to the conversation with the wife. The appellee testified that he did not do anything about filing a claim because "I figured he [Billmyer] had filed it, and I got my same wages all the time and I didn't ask him." The appellee filed his claim with the Accident Commission on May 14, 1954.

The appellant argues that the court erred in submitting the first issue to the jury, because it is undisputed that the claim was not filed until more than two years and four months had elapsed from the date of the accident. The appellee argues that the issue was properly submitted, because the statute reads "within one year after the beginning of his disability", and he was not "disabled", in the sense of being unable to perform his regular work, until May, 1954.

"Disability", within the meaning of the statute, is not synonymous with "accident", but usually the right to compensation arises when the accident occurs, even though the full extent of the disability is not then apparent and the disability is not so pronounced as to incapacitate the injured person from performing his usual work. If the injury is not latent or trivial, limitations begins to run when the injury occurs. "As soon as it becomes reasonably apparent, or should become reasonably apparent, to a workman that he has a compensable disability of any class from an accident (whether he is working or not), he has the right to file a claim and the statute begins to run against him from that time." *Griffin v. Rustless Iron & Steel Co.,* 187 Md. 524, 541. See also *Farmers Coop. Ass'n v. Keller,* 199 Md. 670, 673, and cases cited. In the instant case the injury was reasonably apparent, as is shown by the fact that of his own accord and at his own expense he obtained medical advice and hospital treatment, and the injury was neither latent nor trivial. If the injury was not apparent when he first consulted Dr. Weisman, it was certainly apparent when he entered the hospital on November 7, 1952. It may well be that the court should have directed a verdict on the first issue, as in *Summit Timber Prod. Co. v. McKenzie,* 203 Md. 41. We find it unnecessary to decide the point, since the jury answered the issue in the negative. *Appliance Corp. v. Reimsnyder,* 177 Md. 280, 291. Under the circumstances the error, if any, was harmless.

We think the court erred, however, in submitting the second issue to the jury. The point was preserved by the offer of a demurrer prayer, which was rejected, and exceptions to the charge submitting the second issue. Code (1951), Art. 101, sec. 38, provides that the failure to file a claim is barred by lapse of the time specified "unless it shall be established that failure to file such claim was induced or occasioned by fraud, or by facts and circumstances amounting to an estoppel, in which case the claim shall be filed within one year from the time of the discovery of the fraud, or within one year from the time when the facts and circumstances amounting to an estoppel cease to operate, and not afterwards."

There is no suggestion of fraud and the only evidence that

could conceivably give rise to an estoppel is the testimony as to the conversation on January 29, 1952. This conversation related specifically to a brace, and the employer advanced the money for it. We think the testimony cannot be fairly construed as an undertaking on the part of Billmyer to file a claim for compensation. The appellant never mentioned the matter again, paid all bills himself, and never inquired whether the employer had insurance until more than two years later. These circumstances are inconsistent with the interpretation now sought to be placed on the conversation, and show that no reliance was placed on the alleged offer.

In the recent case of *Patapsco & Back Rivers R. R. v. Davis*, 208 Md. 149, the authorities on the subject of estoppel were carefully reviewed and it is unnecessary to review them here. In that case the Court found legally sufficient evidence of an undertaking to file a claim for an illiterate employee, in a statement that the employer would help him answer a letter from the Railroad Retirement Board, which he understood to involve his right to compensation. The case is distinguishable on the facts, for here the advance of money to buy a brace could not reasonably be construed as an offer to file a claim for compensation. Moreover, in the *Davis* case the employer had previously filed four other claims for compensation on behalf of the employee, and there was evidence of actual reliance. The Court (p. 156) quoted this statement from *Appliance Corp. v. Reimsnyder, supra:* "The cases all agree that there can be no estoppel unless the party who alleges it relied upon the representation, was induced to act by it, and thus relying and induced, did take some action." In the instant case the employee's subsequent actions were wholly inconsistent with a belief on his part that the employer had agreed to file a claim for compensation, or with a reliance thereon by the employee. Cf. *Champness v. Glenn L. Martin Co.*, 193 Md. 188, 195.

> *Order reversed, with costs, and order of the State Industrial Accident Commission affirmed.*