PILLSBURY, Deputy Commissioner v.
UNITED ENGINEERING CO.
et al. (two cases).

PILLSBURY, Deputy Commissioner v.
MATSON TERMINALS
INC. et al.

CYR, Deputy Commissioner v. UNITED
ENGINEERING CO. et al.

Nos. 12644, 12645, 12646, 12647.

United States Court of Appeals
Ninth Circuit.

March 14, 1951.

Frank J. Hennessy, U. S. Attorney, Macklin Fleming, R. H. Colvin, Asst. U. S. Attys., all of San Francisco, Cal. (Ward E. Boote, Asst. Solicitor, Herbert P. Miller, Atty., U. S. Dept. of Labor, Employees'

988

Compensation Div., Washington, D. C., of counsel), for appellant.

John H. Black, Edward R. Kay, San Francisco, Cal., for appellee.

Before: HEALY, BONE, and ORR, Circuit Judges.

HEALY, Circuit Judge.

Involved here are consolidated cases, four in number, arising under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. In each case the Deputy Commissioner found a partial disability growing out of injury suffered in the course of employment. In one instance (the Shallat case) the award was for permanent and in the others for temporary disability. On appropriate proceedings before the district court the awards were annulled on the ground that the claims were barred because not filed within one year after the injury as provided in § 13(a) of the Act, 92 F. Supp. 898. The Deputy Commissioner appeals.

In each case the claimant suffered a specific injury from accident on a particular date. No latent injury or occupational disease is involved. There were no voluntary payments of compensation. The claims were filed on dates ranging from 18 to 23 months after the injury. Omitting for the moment what we regard as irrelevant or argumentative matters, the Deputy Commissioner's findings were these:

No. 12,644. Claimant Johnson on May 12, 1947, struck his head on a crossbeam of a vessel while working as a welder, "sustaining extensive strain of the muscles of the neck which still continues painful." His employer continued him in lighter work in a partially disabled condition without reduction in wages until May 15, 1948. He lost no time from work as a result of the injury until about June 15, 1948. Throughout the period in question he was furnished by his employer with medical treatment. His claim for compensation was filed January 17, 1949.

No. 12,645. Claimant Curnutt, on the 18th of February, 1947, while performing services as a sheet-metal worker in ship repair operations sustained personal injury resulting in disability as follows: While lifting a heavy object, he wrenched his back. He was disabled from work for six days, after which he was continued in lighter work at full wages until his employment was terminated January 13, 1948. He did not lose wages in excess of seven days until February 5, 1948. His claim for compensation was filed January 17, 1949. Medical treatment was furnished him by the employer throughout the period.

No. 12,646. Claimant Shallat on November 21, 1947, while performing services as a longshoreman on a vessel sustained personal injury resulting in disability as follows: He caught his left hand between a sling and a bight, causing a contusion of the left hand, and exacerbation of a pre-existing progressive arthritis of the proximal joint of the second or middle finger. Apparently he lost no time because of the injury and continued at work. It does not appear from the findings whether he received medical treatment at the expense of his employer. His claim for compensation was filed May 23, 1949.

No. 12,647. Claimant Manos on December 22, 1947, while performing services as a welder in the repair of a ship, sustained personal injury resulting in disability when he was struck on top of the head by an iron bar falling from above, suffering strain of the musculature in the cervical region. Following the injury he continued at his regular occupation as a welder without loss of time or wages until January 31, 1949, at which time, because of the condition of his neck, he was forced to discontinue working as a welder and seek other and lighter employment. Throughout the employer furnished him with medical treatment. His claim for compensation was filed August 17, 1949.

The material portion of § 13(a) of the Act reads: "The right to compensation for disability under this chapter shall be barred unless a claim therefor is filed within one year after the injury, * * * except that if payment of compensation has been made without an award on account of such injury * * * a claim

may be filed within one year after the date of the last payment. * * *"

The Commissioner argues that the word "injury" should be construed as meaning "compensable injury." This, he says, has been the practical administrative construction of the term for a long time. He says that the interpretation is "consistent" with § 19(a), providing that a claim for compensation "may be filed * * * at any time after the first seven days of disability", and with § 6(a) providing that "no compensation shall be allowed for the first seven days of the disability * * *." He adds that unless the interpretation meets with judicial approval his office will be flooded with a load of unnecessary claims.

▉ We may observe in passing that the injured men appear to have suffered a disability of greater or less extent from the outset. Two of them, at least, as the Commissioner found, had to be put on lighter work, and all of them confessedly continued from the time of injury to suffer pain and discomfort from it. It is true they lost no time, or none in excess of seven days anyway, and were paid their old wage, but those facts alone do not spell absence of disability for which an award may be made. See Twin Harbor Stevedoring & Tug Co. v. Marshall, 9 Cir., 103 F.2d 513, where this court sustained an award under like circumstances, saying that wages received by a worker who has suffered an injury are not conclusive and that ability to earn is the test.

▉ But we do not, as the trial court did, rest decision on the Twin Harbor holding. What the Commissioner's argument really amounts to is that the statute begins to run, not from the date of the injury, but from the date of disability. The view appears irreconcilable with the plain terms of the Act. The argument necessarily assumes that the terms "injury" and "disability" are interchangeable. However, as we pointed out in Kobilkin v. Pillsbury,

103 F.2d 667, 669, the terms are separately defined in the statute and are not synonymous. Section 2(2) states that when used in the Act "the term 'injury' means accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, * * *." In the same section (subdivision 10) "disability" is defined as meaning "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment."

In the Kobilkin case, supra, the claimant was disabled from work for a period of three weeks following his injury, for the allowable portion of which time compensation was voluntarily paid him. He then resumed his employment at the former wage and continued to work for 17 months, when his condition worsened and it was learned that his injury was more extensive than had originally been thought. Later he filed a claim. Deputy Commissioner Pillsbury disallowed it because not filed within one year from the last payment of compensation as provided in § 13(a). We upheld the ruling and the Supreme Court affirmed without opinion, 309 U.S. 619, 60 S.Ct. 465, 84 L.Ed. 983.[1] Answering an argument somewhat analogous to the one made here, we said that the injury "was inflicted at the time of the accident, not when its full extent was first noted at the later time." [103 F.2d 670.]

The Commissioner endeavors to distinguish the holding on the ground that Kobilkin was off work for more than seven days in consequence of the injury and was appropriately paid compensation. If the distinction were accepted as of controlling significance a startling result would ensue, as will be seen from the following illustration: Worker A is disabled from work for eight days following his injury, and is accordingly paid com-

1. The Kobilkin case, unlike the present, may be thought to have involved a latent or undiscovered injury. It is arguable that in such cases the injury should be treated as arising when its true nature is discovered. Possibly this circumstance accounts for the four to four division among the justices when the case was disposed of in the Supreme Court.

pensation for the eighth day. If he fails to file a claim within a year after the payment he is forever barred. Worker B is disabled from work for but six days or less after injury, and in line with § 6(a), supra, is paid no compensation. According to the argument there is no time limit within which B may file a claim.

■ As the language of § 13(a) evidences, Congress was not unaware that there would be many cases like B's and it deliberately provided that the right to compensation in such cases would become barred unless claim therefor is filed within one year after the injury. If it is thought desirable in the interest of justice or practical administration that a different limitation be prescribed, the power to effect the change resides in Congress, not in the courts.

The decrees of the district court in the several cases are affirmed.