**DEER v. NEW YORK CENT. R. CO.**

No. 10718.

United States Court of Appeals
Seventh Circuit.

March 11, 1953.

Ted B. Lewis, French M. Elrod, Cecil A. Taylor, Indianapolis, Ind., for appellant.

Marvin A. Jersild, Chicago, Ill., Joseph J. Daniels, Karl J. Stipher, Indianapolis, Ind., for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

The appellant, Charles M. Deer, plaintiff below, seeks to reverse an order of the District Court which sustained the motion of the New York Central Railroad Company, defendant-appellee, for summary judgment, and directed that plaintiff take nothing by his suit and that costs be assessed against him.

It appears from the plaintiff's complaint, and from the affidavits filed in support of and in opposition to the motion for summary judgment, that plaintiff had been an employee of the appellee railroad since 1926. That on November 12, 1945, he was engaged in his employment at the Beech Grove Repair Shops, at Beech Grove, Indiana. On that date an accident, which appellant states was caused by the negligence of defendant-appellee, its servants and agents, occurred at the Beech Grove Shops. A 300-pound chain hoist fell some six or eight feet striking appellant on the head, knocking him to the floor and rendering him temporarily unconscious. He suffered a gash and a bump on his head. He was treated by the company nurse for about three or four days succeeding the accident. Prior to that time the appellant had a very heavy head of hair. On about January 12, 1946, two months after the accident, appellant's hair started to come out whenever he combed it or ran his hands through it. On January 16, 1946, he consulted his family physician. He told the doctor of the accident in November and he was informed that his hair nerves had been paralyzed. At that time his family doctor referred him to a specialist. By February 6, 1946, he had lost all of his hair on his head and body. During the Easter season of 1946, appellant suffered several seizures or convulsions. He went to a hospital for about one week and was out of work for about two months. However, he subsequently returned to his employment in June of 1946. It also appears that appellant after the accident suffered continuously from headaches. He continued to work regularly for the appellee railroad until June 24, 1950, on which date he fainted on the job. He has not worked since. It has developed that he has a brain tumor and is totally and permanently disabled and that his condition is the result of the accident on November 12, 1945. The action, under review, was instituted on August 13, 1951, more than five years after the accident. It was based upon the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.

Section 6 of that Act, 36 Statutes 291, 45 U.S.C.A. § 56 et seq. provides:

"No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued."

Since the action here in question was brought about five years and nine months after the accident which caused the injuries complained of, the decisive question in this case is: Did the District Court err in sustaining appellee railroad's motion for summary judgment because the action was not commenced within three years after the date upon which the injuries complained of occurred?

Appellant contends that his cause of action is not outlawed under the terms of the Federal Employers' Liability Act because it did not accrue until he learned on June 24, 1950 that he had a brain tumor and was totally and permanently disabled.

For many years the general rule applied in cases based on common law principles of liability has been that the statute of limitations begins to run when there is a breach of a contract, or when the negligence or other tort complained of, occurs.

Wilcox v. Plummer, 29 U.S. 172, 4 Pet. 172, 7 L.Ed. 821, was an action against an attorney at law to recover the amount of loss sustained by his client because of his negligence and unskilful conduct in attempting to realize on a note placed in his hands for collection. The case arose in the Circuit Court of the United States in and for the District of North Carolina, It sought to recover for a loss sustained by the negligent or unskilful conduct of the attorney. It appears that the plaintiffs on January 28, 1820, had placed with him for collection a promissory note. The attorney

instituted a suit on the note in the State court against the maker thereof but neglected at that time to proceed against the endorser. The maker proved to be insolvent. Thereupon, about a year later, the attorney began suit against the endorser, but in doing so committed a fatal mistake by a misnomer of the plaintiffs. On this suit judgment of nonsuit was ultimately entered in June 1824 against plaintiffs. In the meantime, the claim against the endorser of the promissory note became barred by the statute of limitations applicable thereto.

Thereupon, on January 27, 1825, the plaintiffs sued the attorney, and on his death the suit was revived against his personal representative by *scire facias*.

The jury found a verdict for the plaintiffs, subject to the opinion of the court, on the plea of the statute of limitations which had been interposed as a defense. The time allowed by the limitation statute was three years after the cause of action accrued. The judges of the Circuit Court of the United States in and for the District of North Carolina divided in opinion and directed that the difference be certified to the Supreme Court.

That Court said, 29 U.S. on page 179:

"There were two counts in the declaration: the one laying the breach in not suing at all, until the note became barred, thus treating as a mere nullity the suit in which the blunder was committed; and the other, laying the breach in the commission of the blunder; but both placing the damages upon the barring of the note by the act of limitation. As this event happened on the 22d of November, 1822, this suit is in time, if the statute commenced running only from the happening of the damage. But if it commenced running, either when the suit was commenced against the maker, or a reasonable time after, or at the time of Banks's insolvency, or at the time when the blunder was committed; in any one of those events, the three years had run out. And thus, the only question in the case is, whether the statute runs from the time the action accrued, or from the time that the damage is developed or becomes definite? And this we hardly feel at liberty to treat as an open question.

"* * * The ground of action here, is a contract to act diligently and skilfully; and both the contract and the breach of it admit of a definite assignment of date. When might this action have been instituted is the question; for, from that time, the statute must run. * * *

"The opinion of this court will have to be certified in the language of the defendants' supposed bill of exceptions, to wit, 'that on the first count in the declaration, the cause of action arose at the time when the attorney ought to have sued the indorser, which was within a reasonable time after the note was received for collection, or at all events, after the failure to collect the money from the maker. And that on the second count, his cause of action arose at the time of committing the blunder in issuing the writ in the names of wrong plaintiffs'."

Annotations on when the statute of limitations begins to run in actions for malpractice against physicians, surgeons and dentists will be found in 77 A.L.R. 1317 and 144 A.L.R. 209. The Annotator in 144 A.L.R. says on page 210: "For the most part the authorities are agreed that ordinarily a cause of action for malpractice accrues and the limitation period begins to run at the time of the doctor's wrongful act or omission."

The general principle announced in Wilcox v. Plummer, has been applied to actions under the Federal Employers' Liability Act, the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., and the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq.

Reading Co. v. Koons, 271 U.S. 58, 46 S.Ct. 405, 70 L.Ed. 835, was an action to recover damages for the death of an employee arising under the Federal Employers' Liability Act. In that case the Supreme Court held that the employee's right to recover under the Act accrued on the date the accident occurred, and that

the right to recover for wrongful death under the Act accrued on the date when the death occurred.

In McMahon v. United States, 342 U.S. 25, 72 S.Ct. 17, 96 L.Ed. 26, the Supreme Court applied the same general principle to cases arising under the Suits in Admiralty Act. In Kobilkin v. Pillsbury, 9 Cir., 103 F.2d 667, a claimant who was compensable under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. sec. 901, et seq., was actually disabled for work for three weeks, for the allowable portion of which compensation was paid him. He then returned to his employment and continued to work at his former wage for seventeen months when he learned that his injury was more extensive than had been orginally thought. He filed a claim under the Act. The Court of Appeals for the Ninth Circuit held that his injury was inflicted at the time of the accident and not when the full extent of the injury was first learned. It affirmed the disallowance of his claim by the Commission. This ruling of the United States Court of Appeals was affirmed in 309 U.S. 619, 60 S.Ct. 465, 84 L.Ed. 983, by an equally divided court.

In Pillsbury v. United Engineering Co., 342 U.S. 197, 72 S.Ct. 223, 96 L.Ed. 225, the Supreme Court granted certiorari because of a conflict in circuits in the matter of whether a cause of action accrued on the date of the accident or whether it accrued when the plaintiff was disabled and first learned the full extent of his injuries. The conflict was between the decisions of the Court of Appeals for the Ninth Circuit in Pillsbury v. United Engineering Co., 187 F.2d 987, which held that the action accrued on the date of the accident, and the decision in the Court of Appeals for the District of Columbia, in the case of Great American Indemnity Co. v. Britton, 86 U.S. App.D.C. 44, 179 F.2d 60, which held that the action accrued when the full extent of the injuries were known. In that case the Supreme Court followed the decision of the Court of Appeals for the Ninth Circuit and rejected the conclusion of the Court of Appeals for the District of Co-

lumbia, 342 U.S. 197, 72 S.Ct. 223, 96 L.Ed. 225. It likewise appears in that case that Potomac Electric Power Co. v. Cardillo, 71 U.S.App.D.C. 163, 107 F.2d 962, and Di-Giorgio Fruit Corp. v. Norton, 3 Cir., 93 F. 2d 119, which are, with the Britton case, relied on by the appellant, were called to the attention of the Supreme Court. Indeed they were cited in the dissenting minority opinion in the Pillsbury case, but were ignored in the majority opinion. 342 U.S. 197, 203, 72 S.Ct. 223, 96 L.Ed. 225.

The appellant likewise places great reliance upon the case of Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282. It should be noted that the Urie case concerns an occupational disease. It is also reported in the American Law Reports. In an annotation attached to the report of that case in 11 A.L.R.2d 279, the editors point out on page 281 the distinction between cases involving the contracting of a disease by infection or from exposure to gases, dust or other substances which may be capable of producing disease, and cases of disease following traumatic injuries, they say:

"In the latter sort of case some injury and therefore a cause of action or claim ordinarily results immediately, so that for limitation purposes the situation logically differs from that of a mere exposure to disease which may or may not result in an injury and a cause of action."

It has been held in many cases that a motion for summary judgment should be sustained when the undisputed facts show that under the law the statute of limitations bars the action, or when the equitable doctrine of laches is applicable. See R. F. C. v. Goldberg, 7 Cir., 143 F.2d 752–9; Suckow Borax, etc. v. Borax Consolidated, 9 Cir., 185 F.2d 196, 204–205; and DeLuca v. Atlantic Refining Co., 2 Cir., 176 F.2d 421, 422, 433.

In view of the foregoing authorities, we are constrained to hold that the District Court properly held that appellant's cause of action was barred under the limita-

tion contained in sec. 6 of the Federal Employers' Liability Act.

The judgment of the District Court is therefore

Affirmed.